Jeremy Feigelson
Jeffrey S. Jacobson
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000
*Attorneys for Defendants L'Oréal USA, Inc.,*
*Lancôme, Inc. and*
*Lancôme Luxury Products, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: L'ORÉAL WRINKLE CREAM MARKETING PRACTICES LITIGATION | MDL 2415 |
| | Master Docket No: 2:12-cv-3571 (WJM)(MF) |
| This Document Relates To: ALL CASES | ECF Case |
| | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| | Return Date: July 15, 2013 Oral Argument Requested |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................1

ALLEGATIONS OF THE COMPLAINT ....................................................2

    A.   Lancôme's Absolue Products.................................................2

    B.   Lancôme's High Résolution Products....................................3

    C.   Lancôme's Rénergie Products................................................5

    D.   Lancôme's Visionnaire ..........................................................6

    E.   Lancôme's Génifique Products ..............................................7

    F.   Plaintiffs' Remaining Claims .................................................8

ARGUMENT ..........................................................................................10

  I.   Plaintiffs Lack Standing to Sue Over the 14 Products They Do Not Even Allege They Purchased. ...................................................10

  II.   Plaintiffs Have Not Adequately Pleaded Fraud as to Five Products That They Allegedly Purchased..............................................15

    A.   Plaintiffs' Claims Sound in Fraud and Must Satisfy Rule 9(b). .........16

    B.   Plaintiffs' Claims Regarding These Five Products Fail to Satisfy Rule 9(b)....................................................................17

        1.   Rénergie Lift Volumetry Multiple Action and Rénergie Lift Volumetry Eye..................................................17

        2.   High Résolution Eye Refill-3X™ Triple-Action Renewal Anti-Wrinkle Eye Cream...........................................19

        3.   Visionnaire [LR 2412 4%] Advanced Skin Corrector ...............20

        4.   Absolue Precious Cells Advanced Regenerating and Reconstructing Cream SPF 15....................................20

III.   After Dismissing These Claims, the Court Should Require Plaintiffs to Replead the Remainder, Omitting Advertisements They Never Saw. ...............................................................................21

CONCLUSION ...............................................................................25

APPENDIX A ...............................................................................26

# TABLE OF AUTHORITIES

CASES

*Arlandson v. Hartz Mountain Corp.*,
    792 F. Supp. 2d 691 (D.N.J. 2011) ................................................................12

*Arroyo v. Pfizer, Inc.*,
    No. C-12-4030 EMC, 2013 WL 415607 (N.D. Cal. Jan. 31, 2013)..................16

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
    No. C-11-2910-EMC, 2012 U.S. Dist. LEXIS 101371
        (N.D. Cal. July 20, 2012)..........................................................................13, 14

*Baker v. Home Depot USA, Inc.*,
    No. 11 C 6768, 2013 WL 271666 (E.D. Ill. Jan. 24, 2013) .............................23

*Bronson v. Johnson & Johnson, Inc.*,
    No. C 12-04184 CRB, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013).............23

*Colucci v. ZonePerfect Nutrition Co.*,
    No. 12-2907-SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012)......................14

*Dewey v. Volkswagen AG*,
    558 F. Supp. 2d 505 (D.N.J. 2008)............................................................21, 22

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ...........................................................................16

*Green v. Green Mountain Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011)..........................................................................11

*Hemy v. Perdue Farms, Inc.*,
    No. 11-cv-888 (FLW), 2011 WL 6002463 (D.N.J. Nov. 30, 2011) .................11

*Johns v. Bayer Corp.*,
    No. 09 CV-1935 DMS, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) .................13

*Jovine v. Abbott Laboratories, Inc.*,
    795 F. Supp. 2d 1331 (S.D. Fla. 2011).............................................................16

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .........................................................................19

*Koronthaly v. L'Oréal USA, Inc.*,
No. 07-CV-5588, 2008 WL 2938045 (D.N.J. July 29, 2008) ..................... 10, 11

*Lateef v. Pharmavite LLC*,
No. 12 C 5611, 2012 WL 5269619 (N.D. Ill. Oct. 24, 2012) ..................... 22, 23

*Lewis v. Casey*,
518 U.S. 343 (1996) ..................................................................................... 11, 12

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
865 F. Supp. 2d 529 (D.N.J. 2011) ....................................................... 11, 12, 23

*Llado-Carreno v. Guidant Corp.*,
No. 09-20971-CIV, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011) ............... 17, 20

*Lum v. Bank of America*,
361 F.3d 217 (3d Cir. 2004) ........................................................................... 17

*Maniscalco v. Brother International (USA) Corp.*,
709 F.3d 202 (3d Cir. 2013) ........................................................................... 12

*Maxwell v. Unilever U.S., Inc.*,
No. 5:12-CV-01736-EDJ, 2013 WL 1435232 (N.D. Cal. Apr. 9, 2013) ........... 18

*Miller v. Ghirardelli Chocolate Co.*,
No. C 12-4936-LB, 2013 WL 1402682 (N.D. Cal. Apr. 5, 2013) .............. 13, 14

*Mlejnecky v. Olympus Imaging America, Inc.*,
No. 2:10-cv-2630-JAM-KJN, 2011 U.S. Dist. LEXIS 42333
(E.D. Cal. Apr. 19, 2011) ........................................................................... 13

*Ogden v. Bumble Bee Foods, Inc.*,
No. C 12-1828 LHK, 2013 WL 1636032 (N.D. Cal. Apr. 16, 2013) ............... 23

*Padilla v. Costco Wholesale Corp.*,
No. 11 C 7686, 2013 WL 195769 (N.D. Ill. Jan. 16, 2013) ....................... 12, 13

*Sefton v. Toyota Motor Sales U.S.A., Inc.*,
No. 09 C 3787, 2010 WL 1506709 (N.D. Ill. Apr. 14, 2010) ..................... 16, 19

*Stephenson v. Neutrogena Corp.*,
No. C 12-0426-PJH, 2012 U.S. Dist. LEXIS 105099
(N.D. Cal. July 27, 2012) ........................................................................... 13

*Stewart v. Smart Balance, Inc.*,
   Civ. No. 11-6174, 2012 WL 4168584 (D.N.J. June 26, 2012) ........................... 14

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (Cal. 2009) ....................................................................... 18

*Torres-Hernandez v. CVT Prepaid Solutions, Inc.*,
   No. 3:08-cv-1057-FLW, 2008 WL 5381227 (D.N.J. Dec. 17, 2008) ............... 21

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................... 17

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................ 16

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1, 10

Defendants L'Oréal USA, Inc., Lancôme, Inc. and Lancôme Luxury Products, LLC (collectively, "L'Oréal" or "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss plaintiffs' Master Consolidated Complaint ("Complaint") for failure to state a claim pursuant to Fed. R. Civ. 12(b)(6).

## PRELIMINARY STATEMENT

This is a purported class action brought to challenge the efficacy claims in L'Oréal's advertising for 30 different skincare products sold under the brand names L'Oréal Paris and Lancôme.  The Court should dismiss the Complaint because the 12 plaintiffs fail to plead the most basic requirements for a false advertising class action under the laws of New Jersey, Illinois, Florida, California and Massachusetts, where they live.  They do not allege that they even bought 14 of the 30 products, while as to another five products that they did allegedly buy, they do not allege that they saw or relied upon any particular advertisements that they assert contained false claims.  With respect to the remaining 11 products they allegedly purchased, they cite different advertisements and efficacy statements that ran in different media and at different times, without specifying which if any of these ads they allegedly saw and which motivated their purchases.  L'Oréal will vigorously defend those products and advertisements on the merits when and if plaintiffs put a properly pleaded complaint in place.

## ALLEGATIONS OF THE COMPLAINT

**A.    Lancôme's Absolue Products**

Plaintiffs allege that L'Oréal falsely advertised six products from its "Absolue" product line, but they do not claim to have purchased five of them: Absolue L'Extrait, Absolue Eye Precious Cells Advanced Regenerating and Reconstructing Eye Cream, Absolue Night Precious Cells Advanced Regenerating and Reconstructing Night Cream, Absolue Ultimate BX Replenishing and Restructuring Serum and Absolue Ultimate Night BX Intense Night Recovery and Replenishing Serum. *See* Complaint ¶ 196. Plaintiff Murphy does allege that she bought the sixth product, Absolue Precious Cells Advanced Regenerating and Reconstructing Cream SPF 15. *See id.* ¶ 197. But as the Complaint itself alleges, the advertisements and claims for that product were different from the claims for the five non-purchased products. *Compare id.* ¶ 199 (describing claims respecting Absolue Eye Precious Cells) ("Immediately, the eye contour appears smoother and more radiant."), *id.* ¶ 201 (Absolue Night Precious Cells) ("Results: Upon waking, skin looks rested, soft and supple, and feels wrapped in a veil of comfort.") and *id.* ¶ 203 (Absolue L'Extrait) ("An exceptional elixir exists. It contains up to 2 million Lancôme Rose native cells.")

With respect to the product Ms. Murphy purchased, the Complaint fails to specify which (if any) advertising claims she saw and relied upon in making her

purchase.  *See id.* ¶ 197.  Ms. Murphy only alleges generally that she "saw, read, and relied upon the false, misleading, and/or deceptive efficacy statements contained in L'Oréal's point-of-sale marketing materials such as sales brochures and product displays," *id.* ¶ 98; that she purchased the product "after viewing L'Oréal/Lancôme's television commercials, which repeated the same misleading efficacy claims as appearing in L'Oréal/Lancôme's printed marketing materials," *id.* ¶ 82; and that she "would not have purchased the [cream] had L'Oréal/Lancôme not made such false, misleading, and/or deceptive claims and instead disclosed the true nature of its products." *Id.* ¶ 34.  Nowhere in the 170-page Complaint do plaintiffs identify any advertisements Ms. Murphy saw relating to this particular product or allege why those advertisements supposedly were false.  Further, although Ms. Murphy claims to have *purchased* the product, she does not claim she *used* it or that it failed to meet her expectations.

### B.    Lancôme's High Résolution Products

Plaintiffs challenge the advertising for four products from the "High Résolution" line, but fail to allege that they bought two of them: High Résolution Refill-3X™ Triple Action Renewal Anti-Wrinkle Night Cream and High Résolution Collaser-5X™ Intense Collagen Anti-Wrinkle Serum.  *See* Complaint ¶ 170.  Further, as the plaintiffs plead in the Complaint, L'Oréal advertises different claims for this night cream and facial serum than it does for the High

Résolution eye cream and facial cream with sunscreen that the plaintiffs allegedly purchased.  *Compare id.* ¶ 175 (High Résolution Night Refill-3X: "Fine lines, wrinkles, and imperfections are noticeably less visible by morning, and skin appears refreshed and hydrated.") and *id.* ¶ 176 (High Résolution Collaser 5X: "Target 80% of collagen in just 48 hours").

As to High Résolution Eye Refill-3X™ Triple Action Renewal Anti-Wrinkle Eye Cream, Plaintiffs Davis and Kallen do not allege that they saw the product brochure described in Complaint paragraph 61, which is the only specific source of advertising claims identified regarding this product.  Plaintiffs' only claim of "falsity" in that brochure is that certain asterisked language—that the product "refills the appearance of wrinkles," modifying the advertisement's language that the eye cream "visibly refills wrinkles"—is in too-small type. *Id.* ¶ 61.  But plaintiffs do not allege that they themselves failed to see this language or otherwise were misled by it.  *See id.* ¶¶ 172–73.  Ms. Davis alleges only that she "saw, read, and relied upon the false, misleading, and/or deceptive efficacy statements contained in L'Oréal's point-of-sale materials such as sales brochures and product displays," *id.* ¶ 101, without specifying the particular brochure described in paragraph 61.  Ms. Kallen alleges only in general terms that "from September 2011 to April 2012, [she] saw, read, and received . . . many false, misleading, and/or deceptive product claims, and relied on those material

4

misstatements in making her decision to purchase [the eye cream]," *id.* ¶ 31, and

that she purchased the product "in reliance upon information provided by

L'Oréal/Lancôme in magazine advertisements, including *Glamour* and *Allure*

magazines, among others," *id.* ¶ 87, without specifying any allegedly false

statements in those advertisements.  Neither Ms. Davis nor Ms. Kallen alleges that

she used the product or that it failed to meet her expectations.

### C.    Lancôme's Rénergie Products

Plaintiffs sue over five products from the Rénergie line that they do not

claim to have purchased: Rénergie Eye Anti-Wrinkle and Firming Eye Cream,

Rénergie Oil-Free Lotion Anti-Wrinkle and Firming Treatment, Rénergie Night

Night Treatment Anti-Wrinkle – Restoring, Rénergie Lift Volumetry Neck

Volumetric Lifting and Reshaping Neck Cream, and Rénergie Lift Volumetry

Night Volumetric Lifting and Reshaping Night Cream.  *See* Complaint ¶ 183.

As to Rénergie Lift Volumetry Multiple Action and Rénergie Lift

Volumetry Eye, the Complaint does not identify any advertisements concerning

these products that plaintiffs allege were false.  Plaintiffs' Complaint purports to

quote several general statements about Rénergie from a product brochure, a video

and the Home Shopping Network, *see, e.g.*, ¶¶ 188, 190–91, 193, as well as a

statement that Rénergie Night "has been shown to dramatically decrease the

appearance of fine lines and wrinkles as it fortifies skin's firmness," ¶ 189, but the

Complaint does not allege that Ms. Kallen—the only plaintiff who claims to have purchased these two products—saw these statements, nor does it allege what in these advertisements plaintiffs believe to be false, and why.  All Ms. Kallen alleges is that "from September 2011 to April 2012, [she] saw, read, and received L'Oréal/ Lancôme's materials misrepresentations . . . including L'Oréal/Lancôme's many false, misleading, and/or deceptive product claims, and relied on those material misstatements in making her decision to purchase [the products]," *id.* ¶ 31, and that she purchased the products "in reliance upon information provided by L'Oréal/Lancôme in magazine advertisements, including *Glamour* and *Allure* magazines, among others."  *Id.* ¶ 87.  Ms. Kallen does not allege she ever used either Rénergie product or that the products failed to meet her expectations.

###   D.    Lancôme's Visionnaire

The Complaint identifies one product from Lancôme's "Visionnaire" line, Visionnaire [LR 2412 4%] Advanced Skin Corrector, Complaint ¶ 140, but the sole plaintiff who claims to have purchased it, Ms. Nino, does not claim to have seen or had her purchase motivated by the advertisements for the product referenced in the Complaint, nor does she allege any specific falsities in those advertisements.  *See* Complaint ¶ 142.  She also does not claim that she used the product or that it failed to meet her expectations.

The Complaint cites a product brochure advertising a Génifique product and Visionnaire together, calling them "super serums" that are "perfect partners for younger looking skin." *Id.* ¶ 12. The Complaint does not allege that this statement was false. The Complaint also cites a statement of unspecified origin and a similar statement on L'Oréal's website concerning the number of international patents for Visionnaire, *see id.* ¶ 67, and it elsewhere quotes other statements and survey results about the Visionnaire product. *See id.* ¶¶ 144, 150–51. Ms. Nino does not allege that she saw any of these statements before purchasing the product or that they motivated her purchase. She alleges instead that she "relied on before and after photos of women's faces that purported to demonstrate the dramatic results that would be achieved from using" Visionnaire, *id.* ¶ 102, but does not otherwise describe these alleged advertisements or say where she purportedly saw them. Elsewhere, Ms. Nino alleges only that she saw still other unspecified magazine advertisements and point-of-sale marketing materials. *See id.* ¶¶ 88, 102.

### E.    Lancôme's Génifique Products

Plaintiffs have alleged claims respecting five "Génifique" products, but two of the products—Génifique Eye Light-Pearl Eye Illuminating Youth Activating Concentrate and Génifique Repair Youth Activating Night Cream—were not purchased by any named plaintiffs. *See* Complaint ¶ 157.

### F.    Plaintiffs' Remaining Claims

In addition to the 19 products discussed above, plaintiffs have asserted claims regarding 11 other products.  From the High Résolution line, they challenge High Résolution Refill-3X™ Triple Action Renewal Anti-Wrinkle Cream SPF 15 Sunscreen, which Plaintiff Fabend purchased.  From the Rénergie line, they challenge Rénergie Lift Volumetry Volumetric Lifting and Reshaping Cream, also purchased by Plaintiff Fabend; Rénergie Anti-Wrinkle and Firming Treatment Cream, purchased by Plaintiff Absi; and Rénergie Microlift Eye R.A.R.E.-Intense Repositioning Eye Lifter, purchased by Plaintiffs Absi and Bauer.  From the Génifique line, plaintiffs challenge Génifique Youth Activating Concentrate, purchased by Plaintiffs Murphy, Schwartz, Bauer, Nino and Simmons; Génifique Eye Youth Activating Eye Concentrate, purchased by Plaintiff Simmons; and Génifique Youth Activating Cream Serum, purchased by Plaintiff Nino.

Plaintiffs also have asserted claims regarding four products manufactured by L'Oréal Paris.  The products are all sold as part of the Youth Code product line: Youth Code Serum Intense, purchased by Plaintiff Gordon and Plaintiff Luu; Youth Code Eye Cream, purchased by Plaintiff Goldrick and Plaintiff Luu; Youth Code Day/Night Cream, purchased by Plaintiff Luu; and Youth Code Day Lotion SPF 30, purchased by Plaintiff Goldrick and Plaintiff Luu.

None of the plaintiffs claims to have used any of these products.

In contrast to the five products regarding which plaintiffs do not specify any advertising claims they saw, for the remaining 11 products the Complaint cites multiple advertisements for these products that ran in different years, in different media and, at least in a few cases, only outside the United States.  The Complaint does not contain a clear statement as to which, if any, of the cited advertisements each plaintiff allegedly saw before making her purchase.  For example, the Complaint contains pictures from product brochures, but the plaintiffs do not allege that they saw those particular brochures.  *See* Complaint ¶ 93 (alleging that "brochures . . . were made available at" department store cosmetic counters, but not that a plaintiff received or read them).  Plaintiffs cite other statements that were not in advertisements, but rather appeared in L'Oréal's 2011 annual report to investors.  *See id.* ¶ 151.  Again, none of the plaintiffs claim to have read that report.  Likewise, the Complaint quotes efficacy claims for High Résolution products which they say appeared on Sephora.com, Macys.com, Nordstrom.com, and NeimanMarcus.com, but none of the plaintiffs allege viewing these websites. *See id.* ¶¶ 175, 177–79.  There is even a product insert that plaintiffs appear to have cut and pasted into the Complaint from a blog based in Singapore.  *See id.* ¶ 192.

The Complaint contains dozens of citations in different forms—pictures, quotes and some vague paraphrases—but at no point attempts to identify which, if any, a named plaintiff saw prior to making her or his purchase.

## <u>ARGUMENT</u>

The Court should dismiss plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for the following reasons:

- The Court should dismiss plaintiffs' claims respecting the 14 products they did not purchase because, under the state laws governing their claims, plaintiffs suffered no damages associated with these products.

- The Court should dismiss plaintiffs' claims respecting five products they allegedly purchased, but as to which they do not cite any particular advertising claims that motivated their purchase and that they claim to be false.

- The Court should dismiss plaintiffs' claims respecting the remaining 11 products they challenge and require plaintiffs to replead these claims with a clear statement of which advertisements they relied upon and contend were misleading, omitting from the amended complaint references to advertisements none of them saw.

A summary of the products at issue and L'Oréal's basis for seeking dismissal of plaintiffs' claims respecting each product is attached to this memorandum as Appendix A.

## I.   Plaintiffs Lack Standing to Sue Over the 14 Products They Do Not Even Allege They Purchased.

Plaintiffs do not have standing to pursue claims or to represent a putative class of purchasers with respect to 14 of the 30 products over which they have sued because, having not purchased the products themselves, they cannot allege an injury with respect to those products.  "Standing cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of

10

a class action." *Koronthaly v. L'Oréal USA, Inc.*, No. 07-CV-5588, 2008 WL 2938045, at *4 (D.N.J. July 29, 2008) (citations omitted).

Plaintiffs cannot sue over a range of products after purchasing just some of them. Noting, as the *Koronthaly* court did, that a plaintiff "does not have standing to pursue a claim that products he neither purchased nor used did not work as advertised," the court in *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J. 2011), dismissed claims respecting models of coffee brewing systems other than the model he purchased. The court in *Hemy v. Perdue Farms, Inc.*, No. 11-cv-888 (FLW), 2011 WL 6002463, at *10–11 (D.N.J. Nov. 30, 2011), dismissed claims respecting chicken products the plaintiffs did not purchase, even though—as is not the case here—the plaintiffs in that case were challenging substantively identical advertising statements made for all the products at issue. "[A] plaintiff in a class action must show that she has personally been injured; the class plaintiff cannot rely on 'injuries suffered by other, unidentified members of the class.'" *Id.* at *11, *quoting Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (dismissing claims respecting Bedtime Bath products not purchased by the named plaintiff). *See also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (plaintiffs must "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to

represent.")  Plaintiffs here cannot show injury from products they did not buy or use any more than the plaintiffs in those cases could.

The law requiring a plaintiff to demonstrate injury is the same in each of the named plaintiffs' home states.  Under New Jersey's choice of law rules, the claims of each consumer in a consumer fraud case are governed by the laws of her home state.  *See Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 209 (3d Cir. 2013) (plaintiff's "home state . . . has the 'most significant relationship' to his consumer fraud claim," approving this Court's analysis in *Arlandson v. Hartz Mountain Corp*., 792 F. Supp. 2d 691, 709 (D.N.J. 2011), which followed the "overwhelming majority of courts' application of New Jersey choice-of-law rules under similar circumstances").  Plaintiffs' claims here thus will be governed by the laws of <u>California</u> (where Plaintiffs Absi, Bauer, Fabend, Kallen, Luu and Schwartz reside), <u>Florida</u> (Ms. Nino), <u>Illinois</u> (Ms. Davis and Ms. Simmons), <u>Massachusetts</u> (Mr. Gordon) and <u>New Jersey</u> (Ms. Goldrick and Ms. Murphy).  Not surprisingly, in each of these other states where plaintiffs have attempted to allege class action claims respecting products they did not purchase, courts rejected those claims for the same reasons New Jersey courts have.

In *Padilla v. Costco Wholesale Corp.,* No. 11 C 7686, 2013 WL 195769 (N.D. Ill. Jan. 16, 2013), the plaintiff purchased a Glucosamine supplement, but the court dismissed his claims respecting Glucosamine Chondroitin products he did

not purchase.  The court rejected the plaintiff's arguments that he should be permitted to represent the broader class because the products were "virtually identical," *id.* at *3—as the various products at issue in this case are not.  The court in *Stephenson v. Neutrogena Corp.*, No. C 12-0426-PJH, 2012 U.S. Dist. LEXIS 105099, at *2–3 (N.D. Cal. July 27, 2012), likewise dismissed claims respecting skincare products the plaintiff did not purchase, and the courts in *Miller v. Ghirardelli Chocolate Co.*, No. C 12-4936-LB, 2013 WL 1402682, at *8–10 (N.D. Cal. Apr. 5, 2013), *Mlejnecky v. Olympus Imaging America, Inc.*, No. 2:10 cv-2630-JAM-KJN, 2011 U.S. Dist. LEXIS 42333, at *12 (E.D. Cal. Apr. 19, 2011) and *Johns v. Bayer Corp.*, No. 09 CV-1935 DMS, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010), dismissed claims directed, respectively, to chocolate products, camera models and men's vitamins that the plaintiffs did not purchase.

Plaintiffs can be expected to point to the small number of cases where courts have allowed plaintiffs to sue over products they did not purchase, but any reliance on these cases would lack merit.  In those cases, the only differences between the purchased and not-purchased products were ones of flavor or other small variations.  Thus, for example, the court in *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910-EMC, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012), permitted plaintiffs to assert claims respecting flavors of ice cream

13

they did not purchase, because the defendant made the identical and allegedly false "all natural" claim with respect to all the flavors at issue. *See also Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2012 WL 6737800, *4–5 (N.D. Cal. Dec. 28, 2012) (allowing allegations regarding not-purchased ZonePerfect Nutrition bars because the products were all nutrition bars with merely different flavors); *Stewart v. Smart Balance, Inc.*, Civ. No. 11-6174, 2012 WL 4168584, at *16 (D.N.J. June 26, 2012) (allowing allegations regarding four varieties of "Fat Free Milk" manufactured by the same defendant and sold pursuant to the same "Fat Free" claim, even though the named plaintiffs did not purchase all four varieties). In this case, by contrast, plaintiffs are suing over products meant to be applied to different parts of the face, at different times and for different reasons, and that were sold pursuant to different claims. The *Astiana* line of "different flavor, same claim" cases, therefore, does not apply. As the court stated in *Miller*, distinguishing this line of cases, "[w]here the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased." *Miller*, 2013 WL 1402682, at *8.

For these reasons, the Court should dismiss, with prejudice, plaintiffs' claims respecting the 14 products they did not purchase: Lancôme Absolue L'Extrait, Lancôme Absolue Eye Precious Cells Advanced Regenerating and Reconstructing Eye Cream, Lancôme Absolue Night Precious Cells Advanced

Regenerating and Reconstructing Night Cream, Lancôme Absolue Ultimate BX Replenishing and Restructuring Serum, Lancôme Absolue Ultimate Night BX Intense Night Recovery and Replenishing Serum, Lancôme Génifique Eye Light Pearl Eye-Illuminating Youth Activating Concentrate, Lancôme Génifique Repair Youth Activating Night Cream, Lancôme High Résolution Collaser-5X™ Intense Collagen Anti-Wrinkle Serum, Lancôme High Résolution Night Refill 3X™ Triple Action Renewal Anti-Wrinkle Night Cream, Lancôme Rénergie Eye Anti-Wrinkle and Firming Eye Cream, Lancôme Rénergie Oil-Free Lotion Anti-Wrinkle and Firming Treatment, Lancôme Rénergie Night Night Treatment Anti-Wrinkle – Restoring, Lancôme Rénergie Lift Volumetry Neck Volumetric Lifting and Reshaping Neck Cream, and Lancôme Rénergie Lift Volumetry Night Volumetric Lifting and Reshaping Night Cream.

## II.     Plaintiffs Have Not Adequately Pleaded Fraud as to Five Products That They Allegedly Purchased.

Plaintiffs' allegations regarding five Lancôme products allegedly purchased by four named plaintiffs—Ms. Kallen in California, Ms. Davis in Illinois, Ms. Nino in Florida and Ms. Murphy in New Jersey—should be dismissed because these plaintiffs fail to specify the advertising claims that they saw and that purportedly influenced their purchases.  These are essential elements of a false advertising claim under the laws of all four of the relevant plaintiffs' home states,

and their absence is fatal to plaintiffs' claims respecting these products because
they fail to satisfy the heightened pleading requirement of Fed. R. Civ. P. 9(b).

### A.     Plaintiffs' Claims Sound in Fraud and Must Satisfy Rule 9(b).

The consumer fraud and false advertising laws of the relevant plaintiffs'
home states of California, Florida, Illinois and New Jersey require the plaintiffs to
meet the heightened pleading requirements of Rule 9(b) in order to survive a
motion to dismiss.[1]  *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir.
2007) (NJCFA claims must meet the heightened pleading requirements of Rule
9(b)); *Arroyo v. Pfizer, Inc.*, No. C-12-4030 EMC, 2013 WL 415607, at *8
(N.D. Cal. Jan. 31, 2013) (same for CLRA, UCL and FAL); *Jovine v. Abbott Labs.,
Inc.*, 795 F. Supp. 2d 1331, 1343 fn. 9 (S.D. Fla. 2011) (same for FDUPTA when
claims sound in fraud); *Sefton v. Toyota Motor Sales U.S.A., Inc.*, No. 09 C 3787,
2010 WL 1506709, at *4 (N.D. Ill. Apr. 14, 2010) (same for ICFA).  The
plaintiffs' claims sound in fraud because they allege the Defendants made
affirmative misrepresentations and omissions about the efficacy of the L'Oréal
Paris and Lancôme skincare products which "were likely and reasonably

---

[1]   The plaintiffs' state consumer fraud and false advertising claims are Counts III
and XVII (New Jersey Consumer Fraud Act); Counts IV-VI, XIX-XXI
(California Unfair Competition Laws), Counts VII-VIII, XXII-XXIII
(California Consumer Legal Remedies Act), Counts IX, XXIV (California
False Advertising Law), Counts X-XI (Illinois Consumer Fraud Act) and
Count XII (Florida Deceptive and Unfair Trade Practices Act).

foreseeable to mislead" consumers.  *See, e.g.,* Complaint ¶ 372; *see, e.g., Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (plaintiff's allegations that defendant "deceptively and unlawfully induc[ed] him to purchase" a product sounded in fraud).

The heightened pleading standard requires the plaintiffs to allege facts specific to each plaintiff in order to put the Defendants on notice of the precise misconduct alleged.  *See Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (allegations of fraud "must be accompanied by the who, what, when, where and how of the misconduct charged") (citation and internal quotation marks omitted).  Where plaintiffs do not specify which allegedly false assertions they saw prior to their purchase and why they believe the claims to have been false, as plaintiffs here have not, their claims do not meet this standard and should be dismissed.

**B.    Plaintiffs' Claims Regarding These Five Products Fail to Satisfy Rule 9(b).**

       1.    <u>Rénergie Lift Volumetry Multiple Action and Rénergie Lift Volumetry Eye</u>

Plaintiffs fail to state a claim of consumer fraud respecting Plaintiff Kallen's alleged purchases of Rénergie Lift Volumetry Multiple Action and Rénergie Lift Volumetry Eye because Ms. Kallen does not allege which advertising claims she

saw prior to her purchases, does not allege that those claims motivated her
purchase, and does not allege why those claims supposedly are false.  These all are
required elements of her cause of action.  *See In re Tobacco II Cases*,
46 Cal. 4th 298, 326, 328 (Cal. 2009) (the UCL "imposes an actual reliance
requirement" under which a plaintiff seeking to represent a class of consumers
must "plead and prove actual reliance" on the challenged conduct).  Instead
plaintiffs make only vague allegations that "from September 2011 to April 2012,
[Kallen] saw, read, and received . . . many false, misleading, and/or deceptive
product claims, and relied on those material misstatements in making her decision
to purchase [the products]," Complaint ¶ 31, and that she purchased the products
"in reliance upon information provided by L'Oréal/Lancôme in magazine
advertisements, including *Glamour* and *Allure* magazines, among others."
*Id.* ¶ 87; *see Maxwell v. Unilever U.S., Inc.*, No. 5:12-CV-01736-EDJ, 2013 WL
1435232, at *5 (N.D. Cal. Apr. 9, 2013) (dismissing claims when the plaintiff
failed to "unambiguously specify . . . the allegedly unlawful representations . . .
and the particular statements [p]laintiff allegedly relied on when making her
purchases").  These vague allegations are insufficient to state a claim concerning
these two Rénergie products and the claims regarding them should be dismissed.

2.   <u>High Résolution Eye Refill-3X™ Triple-<br>Action Renewal Anti-Wrinkle Eye Cream</u>

Plaintiffs fail to state a claim regarding High Résolution Eye Refill-3X™

Triple Action Renewal Anti-Wrinkle Eye Cream because, similarly, they do not

allege any particular advertising claims that either Plaintiff Davis or Plaintiff

Kallen saw in connection with her purchase, as required by Illinois and California

law.  *See Sefton*, 2010 WL 1506709, at *4 (dismissing claims because plaintiff did

not identify specific communications); *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

1126 (9th Cir. 2009) (dismissing causes of action because plaintiff failed to specify

which sales material he relied on in making his decision to purchase).  Instead,

plaintiffs allege only that Ms. Davis "saw, read, and relied upon the false,

misleading, and/or deceptive efficacy statements contained in L'Oréal's point-of-

sale materials such as sales brochures and product displays," Complaint ¶ 101, and

that Ms. Kallen purchased the eye cream "in reliance upon information provided

by L'Oréal/Lancôme in magazine advertisements, including *Glamour* and *Allure*

magazines, among others."  *Id.* ¶ 87.  Because plaintiffs do not specify which

"efficacy statements" or "information" either Ms. Davis or Ms. Kallen saw and

relied on, their claims concerning High Résolution Eye Refill-3X™ Triple Action

Renewal Anti-Wrinkle Eye Cream should be dismissed.

### 3.   Visionnaire [LR 2412 4%] Advanced Skin Corrector

Plaintiffs fail to state a claim concerning the Visionnaire product because they do not specify which advertising claims Plaintiff Nino saw that allegedly caused her to purchase it.  *See Llado-Carreno*, 2011 WL 705403, at *5 (dismissing general, conclusory allegations which were not supported by specific facts). Plaintiffs allege that Ms. Nino purchased Visionnaire [LR 2412 4%] Advanced Skin Corrector "in reliance upon information provided by L'Oréal/Lancôme in magazine advertisements, including *Vogue*, *Marie Claire* and *Allure* magazines, among others," Complaint ¶ 88, and that she "saw, read, and relied on print and point-of-sale marketing materials containing false, misleading, and/or deceptive efficacy statements in making her decision to purchase" Visionnaire.  *Id.* ¶ 102. Ms. Nino also alleges she "relied on before and after photos of women's faces that purported to demonstrate the dramatic results that would be achieved from using" Visionnaire.  *Id.* ¶ 102.  However, the plaintiffs do not include images of these before-and-after photos, and the Defendants are unaware of the existence of any such photos.  For these reasons, Ms. Nino has not adequately pleaded her claim.

### 4.   Absolue Precious Cells Advanced Regenerating and Reconstructing Cream SPF 15

Plaintiffs fail to state a claim respecting Absolue Precious Cells Advanced Regenerating and Reconstructing Cream SPF 15 because Plaintiff Murphy, who claims to have purchased it, does not specify the allegedly false advertising claims

that caused her purchase, as required by New Jersey law.  *See Dewey v.*

*Volkswagen AG*, 558 F. Supp. 2d 505, 526–27 (D.N.J. 2008) (dismissing plaintiffs'

NJCFA claims because the plaintiffs did not allege with particularity a causal

nexus between plaintiffs' injuries and defendants' misrepresentations).  Plaintiffs

allege only that Ms. Murphy "saw, read, and relied upon the false, misleading,

and/or deceptive efficacy statements contained in L'Oréal's point-of-sale

marketing materials such as sales brochures and product displays," Complaint ¶ 98,

and that Ms. Murphy purchased the product "after viewing L'Oréal/Lancôme's

television commercials, which repeated the same misleading efficacy claims as

appearing in L'Oréal/Lancôme's printed marketing materials." *Id.* ¶ 82.  These

general allegations about Defendants' supposed misrepresentations are insufficient

to state a claim under the NJCFA.  *See Torres-Hernandez v. CVT Prepaid*

*Solutions, Inc.*, No. 3:08-cv-1057-FLW, 2008 WL 5381227, at *6–7 (D.N.J.

Dec. 17, 2008) (dismissing NJCFA claims because plaintiff did not allege specific

misrepresentations and a causal link between defendant's statements and plaintiff's

loss).  Thus plaintiffs' claims regarding this Absolue product should be dismissed.

## III.   **After Dismissing These Claims, the Court Should Require Plaintiffs to Replead the Remainder, Omitting Advertisements They Never Saw.**

Plaintiffs' 170-page, 517-paragraph Complaint references dozens of

advertisements, few of which pertain to the products the named plaintiffs say they

purchased.  With respect to the allegedly purchased products, plaintiffs reference

advertisements with varied content that ran over multiple years in a variety of

media.  They cite point-of-purchase materials, television commercials,

infomercials, website advertisements and magazine advertisements, some of which

appeared only outside the United States, that made different efficacy or other

claims about the products.  Although the Complaint manages to allege that at least

one plaintiff saw at least one advertisement about the products before purchasing

them, the Complaint never alleges *which* advertisements they saw, which of the

different efficacy claims in them allegedly motivated their purchases and what

about those efficacy claims plaintiffs believe to have been false.

For the same reason plaintiffs can only sue over products they actually

purchased, they can maintain claims for damages only with respect to efficacy

assertions by L'Oréal that they actually saw and that motivated their purchases.

*See, e.g., Dewey,* 558 F. Supp. 2d at 526–27 (D.N.J. 2008) (dismissing plaintiffs'

NJCFA claims which were based on affirmative representations because plaintiffs

did not allege "at which point—if ever—each [p]laintiff was exposed to one or

more of the statements" in the owner's manual and other marketing materials);

*Lateef v. Pharmavite LLC*, No. 12 C 5611, 2012 WL 5269619, at *4 (N.D. Ill.

Oct. 24, 2012) (dismissing ICFA claims based on defendant's web-based

marketing because plaintiff made "no allegation that she visited the website, knew

it existed, or was aware of the statements on it"); *Baker v. Home Depot USA, Inc.*,

No. 11 C 6768, 2013 WL 271666, at *3 (E.D. Ill. Jan. 24, 2013) (dismissing ICFA

claims because plaintiffs did not allege that the defendant's marketing reached the

plaintiffs either first-hand or via third-parties, merely that the defendants made

alleged misrepresentations to the general public).

      Purchasing a product does not confer standing to police every assertion its

manufacturer ever made about the product, anywhere in the world, but only to

challenge the asserted falsity of the specific claims that caused a plaintiff's alleged

damages.  In *Lieberson*, for example, the court dismissed claims respecting alleged

misrepresentations in "television commercials, print advertisements, website or

any medium other than the [p]roduct labels themselves," because the plaintiff only

saw and relied upon the product labels in making the purchase.  865 F. Supp. 2d at

539.  The court in *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB,

2013 WL 1629191 (N.D. Cal. Apr. 16, 2013), also held that a "plaintiff is not

permitted to support a claim alleging misleading product packaging with

statements that he never read or relied upon when making his purchase."  *Id.* at *2

(internal quotations and citations omitted).  Similarly, in *Ogden v. Bumble Bee

Foods, LLC*, No. C 12-1828 LHK, 2013 WL 1636032, at *4–5 (N.D. Cal.

Apr. 16, 2013), the court denied the plaintiff's request for discovery respecting

products she did not purchase that were advertised to have benefits different from

the products she did purchase.  Plaintiffs here should not be allowed to broaden

discovery in this case by the expedient of never specifying which claims they saw.

For these reasons, the Court should dismiss and require plaintiffs to replead

their claims concerning High Résolution Refill-3X™ Triple Action Renewal Anti-

Wrinkle Cream SPF 15 Sunscreen, omitting materials not viewed by Plaintiff

Fabend; Rénergie Lift Volumetry Volumetric Lifting and Reshaping Cream (Ms.

Fabend); Rénergie Anti-Wrinkle and Firming Treatment Cream (Ms. Absi);

Rénergie Microlift Eye R.A.R.E.-Intense Repositioning Eye Lifter (Ms. Absi and

Ms. Bauer); Génifique Youth Activating Concentrate (Ms. Murphy, Ms. Schwartz,

Ms. Bauer, Ms. Nino and Ms. Simmons); Génifique Eye Youth Activating Eye

Concentrate (Ms. Simmons); Génifique Youth Activating Cream Serum

(Ms. Nino); Youth Code Serum Intense (Mr. Gordon and Ms. Luu); Youth Code

Eye Cream (Ms. Goldrick and Ms. Luu); Youth Code Day Lotion with SPF 30

(Ms. Goldrick and Ms. Luu); and Youth Code Day/Night Cream (Ms. Luu).

Unless and until these plaintiffs plead details about the advertisements they

personally relied upon, and why those materials allegedly are false, their false

advertising claims about these products should not proceed.

## **CONCLUSION**

For all the foregoing reasons, Defendants' motion to dismiss should be granted, along with such other relief as the Court deems proper and just.

DATED: April 26, 2013                    DEBEVOISE & PLIMPTON LLP

                                         By: /s/ Jeffrey S. Jacobson

                                             Jeffrey S. Jacobson
                                             Jeremy Feigelson
                                             DEBEVOISE & PLIMPTON LLP
                                             919 Third Avenue
                                             New York, NY 10022
                                             (212) 909-6000

                                             *Attorneys for Defendants L'Oréal*
                                             *USA, Inc., Lancôme, Inc. and*
                                             *Lancôme Luxury Products, LLC*

**APPENDIX A**
**Chart of Products and Basis for Motion to Dismiss**

| Product | Basis of Dismissal | Paragraphs in Complaint |
|---|---|---|
| **Lancôme Products** | | |
| Absolue L'Extrait | Product not purchased | 4, 56, 196, 198, 202–205 |
| Absolue Eye Precious Cells Advanced Regenerating and Reconstructing Eye Cream | Product not purchased | 4, 53, 56, 93, 196, 198–199, 205 |
| Absolue Night Precious Cells Advanced Regenerating and Reconstructing Night Cream | Product not purchased | 4, 53, 56, 93, 196, 198, 201, 205 |
| Absolue Ultimate BX Replenishing and Restructuring Serum | Product not purchased | 4, 56, 196, 198, 205 |
| Absolue Ultimate Night BX Intense Night Recovery and Replenishing Serum | Product not purchased | 4, 56, 93, 196, 198, 205 |
| Absolue Precious Cells Advanced Regenerating and Reconstructing Cream | Failure to specify which claim(s) Plaintiff Murphy saw | 4, 34, 53, 56, 82, 93, 98–99, 196, 197, 198, 200, 205 |
| High Résolution Refill-3X™ Triple Action Renewal Anti-Wrinkle Night Cream | Product not purchased | 3, 56, 170, 174–175, 177, 181-182 |
| High Résolution Collaser-5x ™ Intense Collagen Anti-Wrinkle Serum | Product not purchased | 3, 56, 125, 126, 170, 174, 176–177, 181–182 |

26

| Product | Basis of Dismissal | Paragraphs in Complaint |
|---|---|---|
| High Résolution Eye Refill-3X™ Triple Action Renewal Anti-Wrinkle Eye Cream | Failure to specify which claim(s) Plaintiffs Davis and Kallen saw | 3, 31, 35, 56, 61, 87, 93, 101, 170, 172–174, 177, 181–182 |
| High Résolution Refill-3X™ Triple Action Renewal Anti-Wrinkle Cream SPF 15 Sunscreen | Failure to limit claims and advertisements to those seen by Plaintiffs | 3, 29, 56, 86, 93-95, 170–171, 174, 177, 179–182 |
| Rénergie Eye Anti-Wrinkle and Firming Eye Cream | Product not purchased | 3, 56, 183, 188, 190–195 |
| Rénergie Oil-Free Lotion Anti-Wrinkle and Firming Treatment | Product not purchased | 3, 56, 183, 188, 190–195 |
| Rénergie Night Night Treatment Anti-Wrinkle–Treatment | Product not purchased | 3, 56, 183, 188–195 |
| Rénergie Lift Volumetry Neck Volumetric Lifting and Reshaping Neck Cream | Product not purchased | 3, 56, 183, 188, 190–195 |
| Rénergie Lift Volumetry Night Volumetric Lifting and Reshaping Night Cream | Product not purchased | 3, 56, 183, 188, 190–195 |
| Rénergie Lift Volumetry Multiple Action | Failure to specify which claim(s) Plaintiff Kallen saw | 3, 31, 56, 87, 183, 185, 188, 190–195 |
| Rénergie Lift Volumetry Eye | Failure to specify which claim(s) Plaintiff Kallen saw | 3, 31, 56, 87, 93, 183, 185, 188, 190–195 |

| Product | Basis of Dismissal | Paragraphs in Complaint |
|---|---|---|
| Rénergie Lift Volumetry Volumetric Lifting and Reshaping Cream | Failure to limit claims and advertisements to those seen by Plaintiffs | 3, 29, 56, 86, 93–95, 116, 183–184, 188, 190–195 |
| Rénergie Anti-Wrinkle and Firming Treatment Cream | Failure to limit claims and advertisements to those seen by Plaintiffs | 3, 56, 89, 104, 107–108, 183, 186, 188, 190–195 |
| Rénergie Microlift Eye R.A.R.E.-Intense Repositioning Eye Lifter | Failure to limit claims and advertisements to those seen by Plaintiffs | 3, 32-33, 53, 56, 89, 104–110, 183, 186–188, 190–195 |
| Visionnaire [LR 2412 4%] Advanced Skin Corrector | Failure to specify which claim(s) Plaintiff Nino saw | 3, 12, 37, 56, 67–68, 88, 102–103, 140–156 |
| Génifique Eye Light-Pearl Eye Illuminating Youth Activating Concentrate | Product not purchased | 10, 16, 56, 63–64, 66, 157, 163, 165–169 |
| Génifique Repair Youth Activating Night Cream | Product not purchased | 10, 16, 53, 56, 63–64, 66, 93, 157, 163, 165–169 |
| Génifique Youth Activating Concentrate | Failure to limit claims and advertisements to those seen by Plaintiffs | 3, 10, 12, 16, 30, 32, 34, 36–37, 53, 56, 63–66, 80–82, 88, 90, 93, 96–98, 100, 102–103, 109, 110, 134–137, 157–169 |
| Génifique Eye Youth Activating Eye Concentrate | Failure to limit claims and advertisements to those seen by Plaintiffs | 10, 16, 36, 53, 56, 63–64, 66, 80–81, 93, 157, 162–163, 165–169 |

28

| Product | Basis of Dismissal | Paragraphs in Complaint |
|---------|--------------------|-------------------------|
| Génifique Youth Activating Cream Serum | Failure to limit claims and advertisements to those seen by Plaintiffs | 10, 16, 37, 53, 56, 63–64, 66, 88, 102–103, 157, 161, 163, 165–169 |
| **L'Oréal Paris** | | |
| Youth Code Serum Intense | Failure to limit claims and advertisements to those seen by Plaintiffs | 4–5, 11, 39–40, 69–72, 74, 83, 92, 117, 119–120, 134–137, 206–208, 210–212 |
| Youth Code Eye Cream | Failure to limit claims and advertisements to those seen by Plaintiffs | 4–5, 11, 38, 40,74, 83, 91–92, 117, 206–209, 211–212 |
| Youth Code Day/Night Cream | Failure to limit claims and advertisements to those seen by Plaintiffs | 4–5, 11, 40, 69–72, 74, 83, 92, 117, 206–208, 211–212 |
| Youth Code Day Lotion SPF 30 | Failure to limit claims and advertisements to those seen by Plaintiffs | 4-5, 11, 38, 40, 69–72, 74, 83, 91–92, 117, 206–209, 211–212 |