| | |
|---|---|
| **IN RE L'OREAL WRINKLE CREAM MARKETING AND SALES PRACTICES LITIGATION**<br><br>**MDL 2415** | Civ. No. 2:12-03571 (WJM)<br><br>**AMENDED OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This false advertising multidistrict litigation encompasses a host of putative class actions against cosmetics manufacturer L'Oreal. Plaintiffs' Master Consolidated Complaint contains 26 counts alleging, *inter alia*, consumer fraud act violations, unjust enrichment, and breach of express warranty with respect to 30 L'Oreal products, 16 of which Plaintiffs purchased, and 14 of which Plaintiffs did not purchase. Pursuant to Federal Rule of Civil Procedure 12(b)(1), L'Oreal moves, on standing grounds, to dismiss claims relating to L'Oreal products that Plaintiffs did not purchase. Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), L'Oreal also moves to dismiss Plaintiffs' claims relating to products that Plaintiffs did purchase. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, L'Oreal's Rule 12(b)(1) motion is **DENIED**. L'Oreal's Rule 9(b) and 12(b)(6) motions are **GRANTED IN PART**, and **DENIED IN PART**.

**I.      FACTS**

This case concerns L'Oreal anti-wrinkle creams spread over the following six L'Oreal collections: Absolue, Genefique, High Resolution, Renergie, Visionnaire, and Youth Code. Defendants are L'Oreal USA, Inc. and its luxury brands, Lancome, Inc. and Lancome Luxury Products, LLC (together L'Oreal). Compl. ¶ 2, ECF No. 36. Plaintiffs, 12 in number, purchased L'Oreal anti-wrinkle creams in California, Illinois, Florida, Massachusetts, and New Jersey.[1] Plaintiffs seek to bring class actions predicated on false

---

[1] There are six California Plaintiffs:

- Lydia Fabend
  - Fabend purchased High Résolution Eye Refill-3X Triple Action Anti-Wrinkle Eye Cream with SPF 15 and Renergie Lift Volumetry Lifting and Reshaping Cream during the class period at a Macy's in San Francisco, California. *Id.* ¶ 29. Fabend's purchases were based on representations from L'Oreal that she saw between late 2010 and early 2011. *Id.*
- Alyssa Schwartz
  - Schwartz purchased Lancôme Genifique Youth Activating Concentrate during the class period at a Macy's in San Francisco, California. *Id.* ¶ 30. Schwartz's purchase was based on representations from L'Oreal that she saw around July 2012. *Id.*
- Sonia Kallen
  - Kallen purchased Lancôme High Resolution Eye Refill 3X Anti-Wrinkle Cream and Renergie Lift Volumetry Multiple Action and Renergie Lift Volumetry Eye during the class period at, respectively, a Nordstrom and a Macy's in Canoga Park, California. *Id.* ¶ 31. Kallen's purchases were based on representations from L'Oreal that she saw between September 2011 and April 2012. *Id.*
- Lynn Bauer
  - Bauer purchased Lancôme Renergie Microlift Eye R.A.R.E. Intense Repositioning Eye Lifter and Genifique Youth Activating Concentrate during the class period at a Macy's in San Francisco, California. *Id.* ¶ 32. Bauer's purchases were based on representations from L'Oreal that she saw between 2010 and 2012. *Id.*
- Aida Absi
  - Absi purchased Lancôme Renergie Microlift Eye R.A.R.E. Intense Repositioning Eye Lifter during the class period at, respectively, Macy's and Nordstrom's, in Woodland Hills, California and Northridge, California. *Id.* ¶ 33. Absi's purchases were based on representations from L'Oreal that she saw between late-2010 and mid-2012. *Id.*
- Jessica Luu
  - Luu purchased Youth Code Serum Intense, Youth Code Eye Cream, Youth Code Day/Night Cream, and Youth Code SPF 30 Day Lotion Youth Code Serum Intense during the class period at a Walgreen's in San Francisco, California. *Id.* ¶ 40. Luu's purchases were based on representations from L'Oreal that she saw around Spring 2012. *Id.*

There are two New Jersey Plaintiffs:
- Rosemary Murphy
  - Murphy purchased Absolue Precious Cells Advanced Regenerating and Reconstructing Cream and Genifique Youth Activating Concentrate during the class period at Bloomingdale's in Hackensack, New Jersey. *Id.* ¶ 34. Murphy's purchases were based on representations from L'Oreal that she saw around 2010. *Id.*
- Margaret Goldrick

advertising. The allegedly false advertising occurred during the proposed class period, which runs from the date a particular product was launched until the present. *Id.* ¶ 20.

Plaintiffs' claims relate to 30 products, 16 of which Plaintiffs purchased and 14 of which Plaintiffs did not purchase.[2] Each Plaintiff claims that she purchased L'Oreal's

- Goldrick purchased Youth Code Eye Cream and Youth Code Day Lotion during the class period at a CVS pharmacy in Old Bridge, New Jersey. *Id.* ¶ 38. Goldrick's purchases were based on representations from L'Oreal that she saw in mid to late 2011. *Id.*

There are two Illinois Plaintiffs:
- Kimberly Davis
  - Davis purchased High Resolution Eye Refill-3X Triple Action Renewal Anti-Wrinkle Eye Cream during the class period at a Macy's in Vernon Hills, Illinois. *Id.* ¶ 35. Davis's purchases were based on representations from L'Oreal that she saw around January 2012. *Id.*
- Cheryl Simmons
  - Simmons purchased Genifique Youth Activating Concentrate during the class period, respectively, a Macy's in Chicago, Illinois. Simmons purchased Genifique Youth Activating Duo during the class period from the Home Shopping Network. *Id.* ¶ 36. Simmons's purchased the products around February 20, 2012 and June 24, 2012. *Id.*

There is one Massachusetts Plaintiff:
- Justin Gordon
  - Gordon purchased Youth Code Serum Intense during the class period from Walgreen's Rite-Aid, and/or CVS in and around Boston, Massachusetts. *Id.* ¶ 39. Gordon's purchases were based on representations from L'Oreal that she saw between December 2011 and June 2012. *Id.*

There is one Florida Plaintiff:
- Costanza Nino
  - Nino purchased Lancôme Visionnaire [LR 2412 4%] Advanced Skin Corrector, Genifique Youth Activating Cream Serum and Genifique Youth Activating Concentrate during the class period at a Macy's in Aventure, California. *Id.* ¶ 37. Nino's purchases were based on representations from L'Oreal that she saw between 2010 and 2012. *Id.*

[2] The 14 products that were not purchased by any named Plaintiff are:
- *Absolue*:
  1. Lancôme Absolue L'Extrait;
  2. Lancôme Absolue Eye Precious Cells Advanced Regenerating and Reconstructing Eye Cream;
  3. Lancôme Absolue Night Precious Cells Advanced Regenerating and Reconstructing Night Cream;
  4. Lancôme Absolue Ultimate BX Replenishing and Restructuring Serum;
  5. Lancôme Absolue Ultimate Night BX Intense Night Recovery; and Replenishing Serum.

3

products in reliance on false and misleading L'Oreal advertisements. *Id.* ¶¶ 29-40. Plaintiffs claim that L'Oreal's products "do not, and cannot, provide the results promised." *Id.* ¶ 9. Plaintiffs further claim that if they knew the truth about L'Oreal's products, they would not have purchased them. *Id.* ¶¶ 29-40.

The Complaint does not just allege that L'Oreal made one or two false or misleading claims. Instead, the Complaint describes a "false, misleading, and/or deceptive marketing campaign" whose "central theme" was that L'Oreal anti-wrinkle products were "the product of vigorous scientific research and resulting discoveries." *Id.* ¶ 46. Plaintiffs make the following five allegations about L'Oreal's advertisement campaign:

First, L'Oreal misleadingly touts "in-vitro" testing of its products. *Id.* ¶ 48. In-vitro results "are based on cells in a test tube or petri dish, which means that the ingredients' ability to penetrate actual human skin cannot be assessed." *Id.* ¶ 49. Second, L'Oreal appeals to tests and studies that were either performed with biased samples or with too few participants to derive statistically significant results. *Id.* ¶ 58. Third, L'Oreal uses footnotes and asterisks to "deceptively disclaim the promised results of a particular product." *Id.* ¶ 60. Fourth, L'Oreal claims, falsely, that its products are protected by patents. *Id.* ¶ 62. Fifth, L'Oreal photoshops images to give prospective customers a false impression of their products' efficacy. *Id.* ¶¶ 116-17. Ultimately,

---

- *Renergie*:
    6. Lancôme Rénergie Eye Anti-Wrinkle and Firming Eye Cream;
    7. Lancôme Rénergie Oil-Free Lotion Anti-Wrinkle and Firming Treatment;
    8. Rénergie Night Night Treatment Anti-Wrinkle–Treatment;
    9. Rénergie Lift Volumetry Neck Volumetric Lifting and Reshaping Neck Cream; and
    10. Rénergie Lift Volumetry Night Volumetric Lifting and Reshaping Night Cream.
- *High Resolution*:
    11. Lancôme High Résolution Collaser-5X™ Intense Collagen Anti-Wrinkle Serum and
    12. Lancôme High Résolution Night Refill 3X™ Triple Action Renewal Anti-Wrinkle Night Cream.
- *Genefique*:
    13. Lancôme Génifique Eye Light Pearl Eye-Illuminating Youth Activating Concentrate and
    14. Lancôme Génifique Repair Youth Activating Night Cream.

4

L'Oreal knows or should know that its products "cannot provide the promised age-negating results." *Id.* ¶ 218.

The Complaint also makes specific allegations about the Absolue, Genefique, High Resolution, Renergie, Visionnaire, and Youth Code collections.

### A. Visionnaire Collection

L'Oreal promises customers that "Visionnaire is the '1st skincare [product] capable of fundamentally recreating more beautiful skin . . . it acts biologically on the 12 key targets of aging." *Id.* ¶ 3. In one advertisement for Visionnaire, L'Oreal claims that "one out of two women tempted by a cosmetic procedure decided to postpone it." *Id.* ¶ 144(c). In another advertisement, L'Oreal states that its Visionnaire [LR 2412 4%] Advanced Skin Corrector uses a "visionary molecule that is now protected by 20 International Patents!" while the product's package insert states that a patent is "pending." *Id.* ¶ 67-68. Plaintiffs allege that these statements are false or misleading. *Id.* ¶ 144.

When Nino purchased Visionnaire [LR 2412 4%] Advanced Skin Corrector, she did so based on a before and after photo of a woman's face that "purported to demonstrate the dramatic results that would be achieved from using Lancome products." *Id.* ¶ 102. She also relied on L'Oreal's "false, misleading, and/or deceptive efficacy statements as described [in the Complaint]." *Id.* ¶ 142.

### B. Absolue Collection

The Absolue Collection proclaims a "'decisive breakthrough in stem cells' such that within 7 days skin recovers the visible signs of younger skin." *Id.* ¶ 198. Plaintiffs allege that these statements are false or misleading. *Id.* ¶¶ 10, 205. Plaintiffs also allege that the same efficacy promises appear throughout the advertisements for the product line. *Id.* ¶ 199. When Murphy purchased Absolue Precious Cells Regenerating and Reconstructing Cream, she relied on L'Oreal's "false, misleading, and/or deceptive efficacy statements as described [in the Complaint], and [she] was induced to purchase Visionnaire based upon those statements." *Id.* ¶ 142.

### C. Genefique Collection

The Genefique Collection purports to boosts genes and stimulates the production of youth proteins. *Id.* ¶163. Plaintiffs allege that these statements are false or misleading. *Id.* ¶ 168. Plaintiffs also allege that the same efficacy promises appear

5

throughout the advertisements for the product line. *Id*. ¶¶ 10, 163-67. Murphy, Schwartz, Bauer, Nino, and Simmons were "influenced" to purchase Genefique Youth Activating Concentrate by claims that the product "boosts the activity of genes and simulates the production of youth proteins." *Id*. ¶ 158-62. The same statements led Nino to purchase Genefique Youth Activating Cream Serum. *Id*. ¶ 161.

### D. High Resolution Collection

The High Resolution Collection claims the ability to refills wrinkles in one hour and boost the production of natural skin fillers. *Id*. ¶ 175. Plaintiffs allege that these statements are false or misleading. *Id*. ¶ 180-82. Plaintiffs also allege that the same efficacy promises appear throughout the product line. *Id*. ¶¶ 10, 164-69. Fabend purchased a High Resolution product based references to "clinical data" and in-vitro tests. *Id*. ¶ 94. Davis and Kallen relied on L'Oreal's "false, misleading, and/or deceptive efficacy statements as described [in the Complaint], and [they were] induced to purchase [High Resolution products] based upon those statements." *Id*. ¶ 172-73.

### E. Renergie Collection

The Renergie Collection promises the ability to "fortify skin to make it visibly plumper and fuller," "erase wrinkles," and recontour skin. *Id*. ¶¶ 188, 190-93. Plaintiffs allege that these statements are false or misleading. *Id*. ¶ 194. Plaintiffs also allege that the same efficacy promises appear throughout the product line. *Id*. ¶¶ 10, 190-93. Fabend and Bauer purchased a Renergie product based partly on L'Oreal's representation that the product was based on "clinical data" and in-vitro tests. *Id*. ¶¶ 94, 109. Absi and Kallen relied on L'Oreal's "false, misleading, and/or deceptive efficacy statements as described [in the Complaint], and [they were] induced to purchase [High Resolution products] based upon those statements." *Id*. ¶¶ 172-73.

### F. Youth Code Collection

The Youth Code Collection is advertised as based on 10 years of gene research with the ability to make skin smoother and increases it regenerative powers. *Id*. ¶ 208. Plaintiffs maintain that advertisements throughout the product line contain "uniform, misleading statements and efficacy claims." *Id*. ¶ 207. The Plaintiffs who purchased Youth Code products (Goldrick, Gordon, and Luu) did so based on L'Oreal's

representation that Youth Code can "increase skin's power of regeneration so it regains the qualities of young skin." *Id.* ¶¶ 209-11.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

## III.  DISCUSSION

The Complaint contains 26 counts.  Counts 15-26 pertain to Youth Code products. Counts 1-14 pertain to all other products.  The Court refers to the following 20 counts as the "Fraud Claims":

- o New Jersey Consumer Fraud Act (Counts 3 and 17)
- o California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (Counts 4-6 and 19-21)
- o California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (Counts 7-8 and 22-23)

7

- California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (Counts 9 and 24)
- Illinois Consumer Fraud and Deceptive Business Practices Act (Counts 10 and 11)
- Florida Deceptive and Unfair Trade Practices Act (Count 12)
- Massachusetts General Law, Chapter 93A, §§ 2 and 9 (Count 18)
- Consumer Fraud Laws of Various States (Counts 13 and 25)

Plaintiffs' additional claims are as follows:

- Unjust Enrichment (Counts 2 and 16)
- Breach of Express Warranty (Counts 1, 14-15, and 26)

L'Oreal moves, on jurisdictional grounds to dismiss claims relating to products Plaintiffs did not purchase. L'Oreal also moves, on merits grounds, to dismiss claims relating to products Plaintiffs did purchase.

### A.    Jurisdiction

As noted earlier, Plaintiffs' proposed classes include individuals who purchased 14 products that Plaintiffs did not purchase. On standing grounds, L'Oreal moves pursuant to Rule 12(b)(1) to dismiss claims based on these 14 products. The Court finds that a dismissal on standing grounds would be premature.

Some courts hold that class plaintiffs lack standing to bring suit based on products they did not purchase. *See, e.g.*, *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011). Other courts (including this Court) have adopted a different approach. These courts recognize circumstances in which putative class action plaintiffs can bring class claims based on products they did not purchase. *See Burke v. Weight Watchers Intern., Inc.*, No. 12-6742, 2013 WL 5701489, at **3-4 (D.N.J. Oct. 17, 2013); *Stewart v. Smart Balance, Inc.*, No. 11–6174, 2012 WL 4168584, at *16 (D.N.J. June 26, 2012). Rather than evaluate standing at the motion to dismiss stage, these courts put off the inquiry until class certification, so long as three criteria are met. First, "the basis for each of the claims [must be] the same" with respect to the products the class plaintiffs purchased and the products the class plaintiffs did not purchase. *Id.* (quoting *Stewart*, 2012 WL 4168584, at *16). Second, the products must be "closely related." *Id.* (quoting *Stewart*, 2012 WL 4168584, at *16). And third, the Defendants must be the same. *Id.*

Here, Plaintiffs purchased certain products in the Genefique, Renergie, and High Resolution lines. Plaintiffs want to bring class claims based on 14 additional products in those same lines. Since Plaintiffs are alleging that the advertising campaign for each line repeats the same false or misleading statements, the basis of Plaintiffs claims is the same with respect to all 30 products. Also, the 30 products are closely related because they all fall within the same product lines. Finally, Plaintiffs claims all target the same Defendant: L'Oreal. Accordingly, the Court will defer the standing inquiry until the class certification stage, and the Court will **DENY** L'Oreal's 12(b)(1) motion to dismiss.

**B. Merits**

L'Oreal moves to dismiss the Fraud Claims,[3] arguing that they do not satisfy Rule 9(b)'s particularity pleading requirement. For similar reasons, L'Oreal also moves to dismiss the unjust enrichment and breach of express warranty claims.

1. Fraud Claims (Counts 3, 4-6, 7-8, 9, 10-11, 12, 17, 19-23, and 24)

L'Oreal moves pursuant to Rule 9(b) to dismiss the Fraud Claims, arguing that Plaintiffs failed to plead those claims with particularity. L'Oreal requests that Plaintiffs replead their allegations, omitting any references to advertisements Plaintiffs did not see. The Court finds that Plaintiffs have pled with particularity, and it further finds that repleading the Complaint would be unnecessary.

Rule 9(b) provides: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." "The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d Cir. 2003). Rule 9(b) is satisfied where a plaintiff alleges "what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J. 2011) (quoting *Zebersky v. Bed Bath & Beyond, Inc.*, No. CIVA 06-CV-1735 PGS, 2006 WL 3454993, at *4 (D.N.J. Nov. 29, 2006)). So long as a plaintiff "inject[s] precision or some measure of substantiation into a fraud allegation," the plaintiff has satisfied Rule 9(b). *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

---

[3] While L'Oreal does not explicitly reference certain fraud counts (Counts 13, 18, and 25) in its motion to dismiss, the Court will construe L'Oreal's motion as directed to those counts.

Here, Plaintiffs plead the "who" of the fraud: L'Oreal. Plaintiffs plead the "how" of the fraud: L'Oreal's advertisements caused Plaintiffs to purchase products that "cannot[] provide the results promised." Compl. ¶ 9. Plaintiffs also plead the "when" and the "where" of the fraud. Plaintiffs allege that L'Oreal's false and misleading statements appeared throughout the course of an advertising campaign, and Plaintiffs approximate the time they saw the advertisements. Based on that approximation, L'Oreal has sufficient notice of when Plaintiffs made their purchases. *Cf. Lynch v. Tropicana Products, Inc.*, No. 11-7382, 2013 WL 2645050, at *7 (D.N.J. June 12, 2013) ("Therefore, the 'where' requirement may be satisfied by the misrepresentations allegedly contained on Tropicana's labels or packages; there need not be strict identification of one particular store location where it is alleged that the labeling and packaging in question was sold in thousands of locations throughout the country.").

Plaintiffs also plead the "what" of the fraud. They plead the specific products they bought. And they also plead the misrepresentations that led them to make their purchases. The Plaintiffs who purchased Genefique products (Schwartz, Bauer, Murphy, Simmons, and Nino) did so based on L'Oreal's representation that Genefique can "boost the activity of genes and stimulate the production of youth proteins." Compl. ¶¶ 158-162. The Plaintiffs who purchased Youth Code products (Goldrick, Gordon, and Luu) did so based on L'Oreal's representation that Youth Code can "increase skin's power of regeneration so it regains the qualities of young skin." *Id.* ¶¶ 209-11. The Plaintiff who purchased Visionnaire (Nino) did so based on a before and after photo of a woman's face that "purported to demonstrate the dramatic results that would be achieved from using Lancome products." *Id.* ¶ 102. These allegations satisfy the "what" element for purposes of Rule 9(b).

The Court also holds that Plaintiffs have sufficiently pled the "what" element with respect to their purchases of Absolue, High Resolution, and Renergie products. Some of the Plaintiffs who purchased these products isolate particular statements that caused their purchases. *See, e.g.*, Compl. ¶ 94. These Plaintiffs' claims certainly satisfy Rule 9(b). Other Plaintiffs do not pinpoint the statements they relied on. Instead, they represent, in a general fashion, that they relied on the allegedly false and misleading statements quoted in the Complaint. For example, Murphy claims that she purchased the Absolue product based on "false, misleading, and/or deceptive statements of product efficacy as described [in the Complaint]." Compl. ¶ 197. Murphy's allegation satisfies the "what" of Rule 9(b). Through discovery, L'Oreal will be able to ascertain the exact statements identified in the Complaint that Murphy relied on. Accordingly, the Court will **DENY** the motion to dismiss the Fraud Claims.

2. Unjust Enrichment (Counts 2 and 16) and Breach of Express Warranty (Counts 1, 14-15, and 26)

Counts 2 and 16 are claims for unjust enrichment. Counts 1, 14-15, and 26 are claims for breach of express warranty. L'Oreal moves to dismiss the breach of warranty claims, arguing that "only advertisements that become part of the basis for an actual transaction can possibly give rise to a warranty claim."[4] Reply Br. at 14, ECF No. 45. As set forth in the previous section, this argument fails: for purposes of the motion to dismiss, Plaintiffs' have identified the statements in L'Oreal's advertisements that caused them to purchase L'Oreal products. Similarly, for Rule 9(b) purposes, L'Oreal's unjust enrichment claims survive the motion to dismiss.

L'Oreal makes an additional argument for why the unjust enrichment claims sounding in New Jersey law fail. Its argue that New Jersey law does not allow Plaintiffs to recover in unjust enrichment because Plaintiffs made their purchases from third parties. This argument succeeds. *Fishman v. G.E.*, No. 12-585, 2013 WL 1845615, at *6 (D.N.J. Apr. 30, 2013); *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011). Accordingly, the Court will **DISMISS** the unjust enrichment claims, Counts 2 and 16, **WITH PREJUDICE** to the extent they sound in New Jersey law. The Court will **DENY** the motion to dismiss the remaining claims unjust enrichment claims in Counts 2 and 16, and it will **DENY** the motion to dismiss the breach of warranty claims, Counts 1, 14-15, and 26.

---

[4] L'Oreal's arguments regarding Plaintiffs' unjust enrichment and breach of express warranty claims were made, for the first time, in L'Oreal's reply brief. Normally, courts refuse to consider arguments originating in reply briefs because plaintiffs do not have an opportunity to respond. However, where plaintiffs are given an opportunity to respond, this concern is lessened. *See Troso v. City of Atlantic City*, No. 10-1566, 2013 WL 1314738, at *3 (D.N.J. Mar. 28, 2013) ("Courts ordinarily either decline to consider arguments raised for the first time in a reply brief or afford the non-movant the opportunity to file a sur-reply brief before granting summary judgment on a newly raised basis."). Here, since the Court granted Plaintiffs leave to file a sur-reply brief addressing L'Oreal's unjust enrichment and breach of express warranty arguments, the Court will consider L'Oreal's arguments for purposes of the present motion.

## IV. CONCLUSION

For the reasons set forth above, L'Oreal's Rule 12(b)(1) motion to dismiss is **DENIED**. L'Oreal's motion to dismiss under Rules 9(b) and 12(b)(6) is **GRANTED IN PART**, and **DENIED IN PART**. Counts 2 and 16 are **DISMISSED WITH PREJUDICE** to the extent they seek to assert unjust enrichment claims based on New Jersey law. All other claims survive. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 9, 2013**