UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRAVELODGE HOTELS, INC., a Delaware Corporation,<br><br>      **Plaintiff,**<br><br>v.<br><br>SHIVMANSI, INC., a California Corporation; NARENDRA PATEL, an individual; and HASMUKH D. PATEL, an individual,<br><br>      **Defendants.** | Civ. No. 13-cv-2881 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

  This matter comes before the Court on the unopposed motion of Plaintiff Travelodge Hotels, Inc. ("THI") for default judgment against Defendants Shivmansi, Inc. ("Shivmansi"), Narendra Patel, and Hasmukh Patel pursuant to Fed. R. Civ. P. 55(b). (Dkt. No. 12) For the reasons set forth below, I will enter a default judgment. THI is awarded $112,458.08 in outstanding recurring fees. I will also award $142,368.40 in liquidated damages and interest, and $5,085.77 in attorneys' fees and costs. Post-judgment interest from this date will be awarded at the appropriate rate in accordance with 28 U.S.C. § 1961.

**I. BACKGROUND**

The Agreement

  THI is a Delaware corporation with its principal place of business in Parsippany, New Jersey. (Compl., Dkt. No. 1, ¶1) Shivmansi is a corporation incorporated in California with its principal place of business in Corona, California. (*Id.* at ¶2) Shivmansi's sole shareholders are Narendra Patel, Hasmukh Patel, and Surendra Patel, all of whom are citizens of California. (*Id.* at ¶¶3-4). Only Narendra Patel and Hasmukh Patel (the "Patels"), however, are

1

named in this action. The remainder of this Opinion will collectively refer to Shivmansi and the Patels as the "defendants."

On May 25, 2005, THI entered into a license agreement (the "License Agreement") with Shivmansi for the operation of a 45-room Travelodge guest lodging facility located at 1701 West 6th Street in Corona, California (the "Facility"). (Pl. Aff. in Supp. of Mot. for J. by Default ("Pl. Aff."), Dkt. No. 12-3, ¶3) Shivmansi pledged to operate the Facility as a Travelodge hotel for a period of 15 years. (*Id.* at ¶4). Under Section 7, Section 18, and Schedule C of the License Agreement, Shivmansi was required to make periodic payments to THI for, *inter alia*, royalties, system assessment fees, taxes, interest, and access to its central reservation system (collectively, "Recurring Fees"). (*Id.* at ¶5) Section 7.3 of the Franchise Agreement stated that the interest on such Recurring Fees would accrue at the rate of 1.5% per month for all payments past due. (*Id.* at ¶6)

Section 9.1 of the License Agreement prohibits Shivmansi from transferring its interest in the Facility without THI's prior written consent. (*Id.* at ¶9) Section 9.3 permits THI to withhold such consent unless both Shivmansi and the transferee meet the conditions set forth in that provision. (License Agreement, Section 9.3, Dkt. No. 19)

Section 11.2 lists the circumstances under which THI may terminate the License Agreement. Those circumstances includes when "a violation of Section 9 occurs, or a Transfer occurs before the relicensing process [described in Section 9.3] is completed." (*Id.* at 20) If the License Agreement is terminated pursuant to Section 11.2, Section 13.2 provides that Shivmansi must pay "all amounts owed to [THI]" no more than 10 days after termination. (*Id.* at 22) Those "amounts owed" include all "Recurring Fees on Gross Room Revenues accruing while the Facility is identified as a 'Travelodge.'" (*Id.*) Additionally, under Section 12, Yamuna is obligated to pay liquidated damages within 30 days after termination in an amount equal to "the product of $2,000 multiplied

by the number of guest rooms [THI is] authorized to operate under…this Agreement." (*Id.*)

Section 17.4 states that if legal action is necessary "to enforce this Agreement or collect amounts owed under this Agreement," then the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees." (*Id.* at 27)

On the same day that THI executed the License Agreement with Shivmansi, it also obtained a personal guaranty (the "Guaranty") from Narendra Patel, Hasmukh Patel, and Surendra Patel. (*See* Guaranty, Dkt. No. 12-3, at 44) All three guarantors assumed joint and several liability for Shivmansi's "unpaid or unperformed obligations" under the License Agreement. (*Id.*)

The Alleged Defaults and Termination

THI alleges that on March 29, 2011, Shivmansi sold the Facility to a third party without obtaining THI's prior written consent as required by the License Agreement. (Pl. Aff., Dkt. No. 12-3, at ¶13) It appears that THI worked with the buyer to secure its compliance with the terms of Section 9.3, but that those efforts were fruitless, and that THI therefore withheld its consent to the sale.

On June 3, 2011, THI sent the Patels a letter stating that, based on the unauthorized sale of the Facility, THI had terminated the License Agreement as of the date of the sale, March 29, 2011. (*Id.* at ¶14). The letter further stated:

> While we have been working in good faith with your Buyer in an effort to secure a long-term agreement to continue the Facility's affiliation with the Travelodge Chain, our efforts have not been successful. We regret that the Facility will no longer operate as a Travelodge facility and must now require you to fulfill the post-termination obligations set forth in the Agreement, including the payment of liquidated damages.

> As a result of your premature termination of the Agreement, you are required to pay us liquidated damages in the amount of $90,000 as provided in Section 12.1 of the Agreement...You are also responsible to pay all outstanding Recurring Fees and other charges within 10 days. We estimate that as of March 29, 2011, you owe us $78,313.46 in Recurring Fees.

(Pl. Aff., Ex. B, Dkt. No. 46)

<u>The Present Action</u>

THI now seeks a default judgment against Shivmansi and the Patels in the amount of $259,912.25. Specifically, THI seeks: (1) $112,458.08 in outstanding Recurring Fees; (2) $90,000 in liquidated damages; (3) $52,368.40 in prejudgment interest on those liquidated damages; and (4) $3,900 in attorneys' fees and $1,185.77 in costs.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

## II.   ANALYSIS

The entry of a default judgment is "left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July

4

17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Id.*

### A. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the 21-day period prescribed by the Federal Rules. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Service of a corporate entity, such as Shivmansi, may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1). New Jersey law states in relevant part that service on a corporation may be made:

> [B]y serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties.

N.J. Ct. R. 4:4-4(a)(6).

Service of individual defendants, such as the Patels, may be made under the Federal Rules by doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). Service may also be made by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1). The New Jersey rule for serving individuals mirrors the Federal Rule. *See* N.J. Ct. R. 4:4-4(a)(1).

Here, THI successfully served the defendants on May 22, 2013. (Cert. of Bryan Couch in Supp. of Mot. for J. by Default ("Couch Cert."), Dkt. No. 12-2, ¶5, Ex. A; *see also* Dkt. No. 5) The time to respond to the Complaint has long since expired. On June 18, 2014, the clerk entered default. (Dkt. No. 6) Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

### B. Three Factor Analysis

I must now evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir.1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

The evaluation of the first factor is impeded, of course, by the defendants' failure to answer or oppose this motion. Nevertheless, my independent review of the record does not suggest that the claims asserted by THI are legally flawed or that the defendants could mount a meritorious defense. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that THI has stated a claim for relief.

The Complaint contains six causes of action, which boil down to a claim that Shivmansi has breached the License Agreement and that the Patels, as guarantors, are liable for its debts.

Under New Jersey law, a prima facie case for breach of contract requires that the plaintiff show: (1) a contract between the parties; (2) a breach of that contract; and (3) damages resulting from the breach. *See Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985); *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Those elements are satisfied here.

The facts alleged in the Complaint, along with the declaration submitted in support of the THI's motion and the exhibits annexed thereto, establish: (1) that the parties created a valid and enforceable contract in the form of the License Agreement; (2) that Shivmansi breached the License Agreement by selling the Facility without THI's consent; and (3) that THI accrued damages as a result of this breach. In sum, the facts alleged by THI state a claim for breach contract against Shivmani. I cannot discern a meritorious defense to this claim from the record before me.

To prove a claim for breach of a personal guaranty, the plaintiff must show: (1) the execution of the guaranty by the guarantor; (2) the principal obligation and terms of the guaranty; (3) the lender's reliance on the guaranty in extending monies to the borrower; (4) default by the principal obligor, (5)

7

written demand for payment on the guaranty; and (6) failure of the guarantor to pay upon written demand. *U.S. on Behalf of Small Bus. Admin. v. DelGuercio*, 818 F. Supp. 725, 728 (D.N.J. 1993).

Based on the record before me, I find that THI has stated a claim for breach of a personal guaranty: (1) the Patels executed the Guaranty; (2) the Guaranty states that they will be personally liable for all of Shivmansi's unpaid obligations under the License Agreement; (3) the Guaranty expressly provides that its purpose is to "induce Travelodge Hotels, Inc...to sign the License Agreement"; (4) Shivmansi, the principal obligor, defaulted under that agreement; (5) the June 3, 2011 letter to the Patels demanded payment of Shivmansi's unpaid obligations; and (6) the Patels have failed to pay on the guaranty. Once again, no meritorious defense to this claim is apparent.

The second and third factors also weigh in favor of default. The defendants were properly served on May 22, 2013—nearly two years ago—but have failed to appear and defend themselves in any manner. It is clear that THI has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that a defendant's failure to answer prejudices the plaintiff). Additionally, unless there is evidence to the contrary, the defendants' failure to answer the Complaint is sufficient to prove its culpability in the default. *Id.* In this case, "there is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the Complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, each of the three factors support the entry of default judgment against the defendants. I therefore find that default judgment is warranted.

**C. Remedies**

THI seeks an award of $259,912.25, which comprises the following four forms of monetary relief: (1) $112,458.08 in outstanding Recurring Fees; (2) $90,000 in liquidated damages; (3) $52,368.40 in prejudgment interest on those liquidated damages; and (4) $3,900 in attorneys' fees and $1,185.77 in costs.

I will grant THI's request for the amount owed as Recurring Fees, as set forth in Section 7, Section 18.4, and Schedule C of the License Agreement. The itemized statement submitted in support of THI's motion details unpaid Recurring Fees dating back to December 2008. (*See* Pl. Aff., at ¶15, Ex. C, Dkt. No. 12-3, at 57). As of March 2011, the outstanding balance on the account was $113,423.50. That amount includes interest, which accrued at the rate of 1.5% per month in accordance with Section 7.3. THI, however, only requests $112,458.08. I cannot account for this discrepancy, and I will therefore use my discretion to award the lower amount.

I will also grant THI's request for $90,000 in liquidated damages and $52,368.40 interest. These amounts are determined by Sections 12.1 and Section 7.3 of the License Agreement.

Section 12.1 sets the amount of liquidated damages at the rate of $2,000, multiplied by the number of guest rooms in the Facility. The Facility contained 45 rooms, which yields a figure of $90,000.

Section 7.3 establishes a 1.5% interest rate on all unpaid sums owed to THI. I agree with THI that this interest rate applies to the amount owed as liquidated damages. (Pl. Aff. ¶22) I also agree as to the date that the interest began to accrue: April 28, 2011 (*i.e.*, 30 days after the date THI terminated the

9

License Agreement). (*Id.*) The amount of interest owed by the defendants is calculated from that date through July 21, 2014, which was the return date for THI's motion for default judgment. The $52,368.40 figure is calculated by multiplying $90,000 by 18% per year, which equals $16,200 in interest per year. That amount is then divided by 365 days to equal $44.38 in interest per day. When the per diem interest of $44.38 is multiplied by 1,180 days—the number of days between the date of termination and the return date of the motion—the interest owed is $52,368.40. (*Id.*)

Finally, as to attorneys' fees and costs, I adopt THI's analysis. THI has adequately documented its attorneys' fees, which do not seem unreasonable or disproportionate. (*See* License Agreement, Section 17.4, Dkt. No. 12-3, at 26 (giving the prevailing party the right to recover reasonable attorneys' fees); Pl. Aff. ¶23; Couch Cert. ¶¶9-11, Ex. B) I will therefore award $3,900 and $1,185.77 in attorneys' fees and costs, respectively, for a total of $5,085.77.

## III. CONCLUSION

For the foregoing reasons, a default judgment will be entered in favor of Plaintiff Travelodge Hotels, Inc., in the total amount of $259,912.25, with post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

An appropriate order will issue.

_____
KEVIN MCNULTY, U.S.D.J.

Date: May 13, 2015